IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM WATSON, DB-3614,     )
     Petitioner,     )
     )
     v.     )   Civil Action No. 06-1333
     )
PENNSYLVANIA BOARD OF     )
PROBATION AND PAROLE , et al.,     )
     Respondents.     )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of William Watson for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional issue.

II. Report:

William Watson, an inmate at the State Correctional Institution Laurel Highlands has presented a petition for a writ of habeas corpus. In an Order entered on October 19, 2006, the respondent and the Attorney General of Pennsylvania were directed to answer and show cause, if any, why the relief sought should not be granted.

Watson was originally convicted upon his plea of guilty entered in the Court of Common Pleas of Allegheny County to charges of burglary at No. CC9302017. On August 18, 1993 he was sentenced to a five to ten year period of incarceration.[1] It is not his conviction which Watson seeks to challenge here, but rather the manner in which the Pennsylvania Board of Probation and

---

[1] See: Petition at ¶¶ 1-6.

Parole ("the Board")  calculated his sentence and his tentative release date.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears that
the applicant has exhausted the remedies available in the courts of the State, or
that there is either an absence of available State corrective process or the existence
of circumstances rendering such process ineffective to protect the rights of the
prisoner.

This statute represents a codification of the well-established concept which requires that
before a federal court will review any allegations raised by a state prisoner, those allegations must
first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S.
475 (1973); Braden v.  30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v.
Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would
be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez,
supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir.  1995).

If it appears that there are available state court remedies, the court must determine
whether a procedural default has occurred. If a procedural default has occurred, the court must
determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage
of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d
Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413
(2000) stated:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions
is satisfied - the state-court adjudication resulted in a decision that (1) "was
contrary to ... clearly established Federal law, as determined by the Supreme Court

2

of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the Commonwealth does not fully address the issue of exhaustion, but represents that this Court may move directly to the merits of the petition since it is conclusively demonstrated that the petitioner is not entitled to relief. Rhines v. Weber, 544 U.S. 269 (2005). Accordingly, the Commonwealth has made an extensive submission demonstrating that the petitioner is not entitled to relief and that his correct maximum release date is January 31, 2007.

In response to the motion the Commonwealth has set forth documentation demonstrating the plaintiff's extensive criminal record and how, from that record, his release date has been

3

calculated.

On August 18, 1993, the petitioner was sentenced to a five to ten year period of incarceration in the Court of Common Pleas of Allegheny County, Pennsylvania. Because of a prior sentence, the effective date of this sentence was January 1, 1996 and the plaintiff's minimum release date was January 1, 2001 and his maximum date was January 1, 2006.[2] On October 26, 2000, parole was denied.[3] On November 13, 2001, he was ordered paroled to a Florida detainer and released from Pennsylvania custody on January 2, 2002.[4]  Thus, at the time of his Pennsylvania release he had about four years remaining on his sentence.

On October 25, 2002, after the petitioner was released in Florida, a warrant was issued by the Board for his arrest for a technical parole violation.[5] On March 4, 2003, the Board ordered him to serve twelve additional months as a technical parole violator for a curfew violation.[6] As a technical violator, the petitioner retained his maximum release date of January 1, 2006.

On November 18, 2003, the Board determined that the petitioner should be reparoled.[7] On February 11, 2004, he was actually ordered reparoled to another Florida detained. And transferred to Florida custody on March 18, 2004.[8] Thus, as a technical violator, his maximum

---

[2] See: Exhibits 1, 6, 7 to the answer.

[3] See: Exhibit 8 to the answer.

[4] See: Exhibit 9 to the answer.

[5] Id.

[6] Id.

[7] See: Exhibit 10 to the answer.

[8] Id.

4

release date on the Pennsylvania charges remained January 1, 2006.

After being released by Florida, the petitioner returned to Pennsylvania where he as arrested on new criminal charges and ordered detained by the Board pending disposition of the criminal charges on June 25, 2004.[9] Following his criminal conviction, on May 12, 2005, the Board ordered the petitioner recommitted as a convicted parole violator to serve nine months back time.[10] On September 28, 2005, the Board recalculated the petitioner's maximum release date as January 31, 2007.[11] It is this calculation extending his maximum sentence from January 1, 2006 to January 31, 2007 about which the petitioner now complains.

The relevant Pennsylvania statute concerning technical violators, 331 P.S. 331.21a(b) provides:

> Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime ... may be recommitted after a hearing before the board. *If he is so recommitted, he shall be given credit for the time served on parole in good standing* but with no credit for delinquent time, and may be reentered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole, and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board. Such prisoner shall be subject to reparole by the board whenever in its opinion the best interests of the prisoner justify ... and it does not appear that the interests of the Commonwealth will be injured thereby (emphasis added).

As a result of these provisions, when arrested as a technical violator, the petitioner properly

---

[9] Id.

[10] Id.

[11] See: Exhibit 12 to the answer.

retained his January 1, 2006 release date.

However, the relevant statute concerning convicted violators, 61 P.S. 331.21a(a)

provides:

> Convicted Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and *he shall be given no credit for the time at liberty on parole.* The board may, in its discretion, reparole whenever, in its opinion, the best interests of the prisoner justify or require his release on parole and it does not appear that the interests of the Commonwealth will be injured thereby... (emphasis added).

During the relevant time period between January 1, 1996, the effective date of the present

sentence, and the present time, Watson was actually not incarcerated by Pennsylvania during the

periods between January 2, 2002 and October 25, 2002 (296 days) and March 18, 2004 and June

25, 2004 (99 days). The remained of time he was incarcerated in Pennsylvania.

Under the terms of the relevant statute, 61 P.S. 331a(a), as a convicted violator he is not

entitled to credit for the time he was not in Pennsylvania's custody, or 395 days.[12] When added to

his original maximum release date of January 1, 2006, the petitioner's new maximum date is

properly calculated as January 31, 2007. For this reason, the petitioner's contentions here are

meritless and it is recommended that the petition of William Watson for a writ of habeas corpus

be dismissed and that a certificate of appealability be denied for lack of a viable federal

constitutional issue.

---

[12] 296 days + 99 days = 395 additional days of time owed on his sentence.

6

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: December 4, 2006                     United States Magistrate Judge